## FARMERS' LOAN & TRUST Co. *v.* OXFORD IRON Co. and others.

*(Circuit Court, D. New Jersey.*   July 20, 1882.

FORECLOSURE SALE—POSTPONEMENT.

> Where the sale of mortgaged premises under a foreclosure decree, appointed for a particular date, would be ultimately detrimental to all interests to all interested, and good cause is shown therefor, the petition of defendants for a postponement of the sale to a future day fixed will be granted.

In Equity.

*Turner, Lee & McClure*, for complainants.

*Cortlandt & R. Wayne Parker*, for defendants.

NIXON, D. J.   This matter is before me on the petition of the Oxford Iron Company, and the firm of Selden T. Scranton & Co., defendants in the above suit, praying that the sale of the mortgaged premises be further postponed.

It appears that on the first of April, 1876, the Oxford Iron Company, a corporation of the state of New Jersey, doing business at Oxford, in the county of Warren, and being the owner in fee of certain real estate, including farms, lands, mines, and mining rights, situate in the said county of Warren, caused to be issued bonds of the corporation amounting in the aggregate to $750,000, payable April

1, 1896, with interest semi-annually, at the rate of 7 per cent. per annum, on the first days of October and April; and at the same time duly executed a mortgage to the Farmers' Loan & Trust Company, a corporation of the state of New York, upon all its real estate and appurtenances, to secure the payment of the said bonds and accruing interest. Only a small portion of these bonds were sold, the bulk being assigned and pledged by the company to its numerous creditors as collateral security for loans made, or for its general indebtedness in carrying on its business. Owing to the great depression in the iron trade of the country, and especially in that department of industry which the Oxford Company was organized to carry on, it failed to meet its liabilities, and became so much embarrassed in September, 1878, that the chancellor of the state, on proper proceedings before him, issued an injunction restraining its officers from any further exercise of the franchises of the corporation, and appointed Mr. Benjamin G. Clarke receiver.

The company failing to pay the interest on the bonds as it fell due, the Farmers' Loan & Trust Company, the trustee, at the request of a large majority of the holders, filed a bill in this court for the foreclosure of the mortgage, and a final decree has been entered for the sale of the mortgaged premises,—the decree setting forth that there was due to the complainant corporation, in trust for the several bondholders, the sum of $171,377.50, for interest thereon to October 1, 1881; that none of the principal of said bonds was due; that the mortgaged premises were so situate that they could not be sold in parcels without prejudice to the parties interested in procuring the highest and best price for the same; and that a part could not be sold to satisfy the amount due without a material injury to the remaining part. Execution was duly issued thereon, directed to the marshal of the district, and he has advertised the whole of the premises to be sold on the twenty-first of July instant.

The petitioners represent that the mortgaged premises are a very valuable property, costing the company upwards of $1,700,000, and that their sale, at the present time and under existing circumstances, would be alike disastrous to the interests of the corporation and its creditors:

(1) Because such a sale should not take place in midsummer, when business is largely suspended, and capitalists and business men are away at the usual summer resorts. (2) Because the receiver, who has had the management of the affairs of the company, under the supervision of the chancellor of the state, since 1878, and to whom purchasers would naturally apply in

endeavoring to ascertain the value of the plant, is absent in Europe, and will not return before the first week in September. (3) Because persons proposing to purchase, and making inquiries in regard to the productive value of the property, would be misled by the last report of the business, filed by the receiver in the court of chancery, for the year ending September 1, 1881; that although said report shows upon its face a loss of $25,000 from carrying on the business during the previous year, there was, in truth, a gain for the year; that the apparent deficiency was caused by the receiver applying about $40,000 of the profits to the building of a new and more efficient blast-furnace, to the permanent betterment of the plant. (4) Because the accounts of the managing superintendent show that the receiver has now got the property in such good working order that during the months of the current year its average profits have been little short of $10,000 per month; and that the receiver's report to be made to the chancellor on the first of September next will reveal such net profits as greatly to enhance the value of the premises in the estimation of purchasers at the sale. And (5) because the petitioners are now engaged, with good prospect of success, in forming a syndicate to purchase the mortgaged premises at such a price as will relieve them of all embarrassment and enable them to meet their liabilities in full, with the corporate and partnership assets, without the sacrifice of their private estate.

These different grounds are supported to some extent by the testimony, but the fact in the case which largely influences me to grant the motion is this: On the hearing of the rule to show cause why the adjournment should not be ordered, Judge Hand appeared for the bondholders, to resist the postponement, and in reply to the suggestion of the counsel of the petitioners, that no bidders could be got to the sale at this season of the year, he stated that the bondholders had formed a combination for mutual protection of interests, and, if needs be, would make the property bring at least a half million of dollars; and that the confirmation of the sale was with the court, and if the price was not satisfactory, any sale would be nugatory. Now, I think, it would be ultimately detrimental to all interests to have a sale take place which the court could not approve, because of the inadequacy of the price. Experience has shown that such judicial interferences, in the absence of fraud, are ordinarily not successful in promoting the end which is sought to be accomplished; but if the sale should go on under the present circumstances, and a bid not exceeding the amount suggested was obtained, and proceedings were taken to hinder a confirmation, I should regard the reasons stated and the arguments used for the postponement as of much force when urged against the confirmation of the sale. It is better for all parties that the court should listen to them now, rather than then.

The rule to show cause is made absolute.

I should have designated the last week in September as the proper time for the adjournment, but the chairman of the committee of bondholders stated in open court that he could not attend the sale during the month of September.

Let an order be entered directing notice to the marshal, and the solicitors of the respective parties, that the sale of the property stands over until Tuesday, October 10, 1882, at the same place and hour as heretofore advertised, and that the marshal give legal public notice of the adjournment.